IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RANDALL WILCOX,

        Plaintiff,

vs.                                                 No. 1:06-cv-0958 MCA/RLP

COUNTY OF CIBOLA and RICHARD
LUCERO,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants' Motion for Partial Summary Judgment on Plaintiff's Procedural Due Process and First Amendment Claims and Supporting Memorandum* [Doc. 26], filed July 30, 2007. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court **GRANTS** the motion.

### I.    INTRODUCTION

Plaintiff Randall Wilcox was employed as a certified nursing assistant (CNA) at the Cibola County Detention Center (CCDC) from January 2005 until his employment was terminated in June 2006. Wilcox alleges four counts arising from his termination. Defendants move for summary judgment on Count I and a portion of Count II.

Count I is a due process claim based upon Defendants' alleged failure to provide a termination hearing. The portion of Count II that is the subject of Defendants' motion is a First Amendment retaliation claim based upon an incident report Wilcox wrote about four

1

months before he was terminated.[1]  Wilcox has conceded the due process claim, thus, only the First Amendment claim remains in dispute.

## II.    BACKGROUND

The relevant undisputed facts are set forth below.

Wilcox was hired on January 24, 2005, as a temporary CNA at the CCDC. [Doc. 26-2 ¶ 2.]  On August 1, 2005, Wilcox was hired as a full-time CNA, subject to a one-year probationary period. [Id. ¶¶ 4–7.]  During the time of his employment, Wilcox also was a member of Cibola County's Special Operations Group (SOG). [Doc. 30-2 at 2.]  As a member of the SOG team, Wilcox was on call to respond to inmate disturbances together with other SOG team members. [Id.]

In January 2006, the SOG team, including Wilcox, was called in to respond to a report that several inmates might be in possession of weapons.  [Doc. 30-2 at 3.]  Upon arriving at the jail, the SOG team entered the housing unit and while some team members secured an inmate found in possession of a weapon (inmate Sandoval), Wilcox searched inmate Sandoval's bunk. [Id.]  The SOG team then escorted inmate Sandoval to an individual cell. [Id.]  Several hours later, after making sure the inmates were housed, the SOG team reconvened to write incident reports. [Id. at 4.] Wilcox's report consists of approximately one-half page of handwritten text on a CCDC "Informal Incident Report Form." The entirety

---

[1] Defendants have not moved for summary judgment on Wilcox's claim for breach of contract (Count III) and failure to pay overtime in accordance with the Fair Labor Standards Act (Count IV).  Nor have they moved for summary judgment on the First Amendment claim based upon Wilcox's allegation that he reported the allegedly illegal administration of medication to inmates.

of the handwritten text under "Summary of Incident" is set forth below.

> On 1-26-06 at approx 2327 hours, Inmate Sandoval, Clyde was placed in charley pod cell #201. Inmate Sandoval started to get upset. Lt. Sisneros gave inmate Sandoval several orders to come to the food port so Lt. Sisneros could remove his restraints. Inmate Sandoval started yelling and banging his head on the door. Lt. Sisneros was still giving Inmate Sandoval orders to come to the food port and cuff up. At this time Inmate Sandoval was still banging his head on the cell door. Lt. Sisneros then gave Inmate Sandoval 3 verbal orders to get on the floor and Inmate Sandoval still refused orders. Lt. Sisneros then deployed his Fox Stream pepper spray into Inmate Sandoval['s] cell. After 3 [illegible] the pepper spray was deployed. Inmate Sandoval complied with orders. Inmate Sandoval was removed from his cell and he was escorted to medical to be checked. Inmate Sandoval was then transported to Cibola General Hospital....End of Report

The report is signed by Wilcox and dated January 26, 2006. [Doc. 40-2.] Wilcox went home after writing and turning in his incident report. [Doc. 30-2 at 4.]

Several days later, Wilcox was on medical rounds escorted by Captain Sterling Francis.[2] [Doc. 28 at 7.] Inmate Sandoval approached them, accused the SOG team of wrongdoing the night of the incident, and threatened to sue.[3] [Id.]

Wilcox then followed Captain Francis into an office and observed Captain Francis call Defendant Richard Lucero[4] on the telephone. [Doc. 28 at 7–8.] Captain Francis reported

---

[2] According to Wilcox, a sergeant or lieutenant was required to accompany him during "med rounds." [Doc. 28 at 7.]

[3] Aside from Wilcox's incident report, the record does not indicate what happened after the SOG team escorted inmate Sandoval away the night of the incident. Inmate Sandoval, however, reportedly complained that he had been subjected to excessive force. [Doc. 28, p. 7.]

[4] Defendant Lucero allegedly is the jail administrator. [Doc. 1 at 1.]

3

inmate Sandoval's threat to Defendant Lucero, who, according to Wilcox, stated: "Don't worry about it. We have your back." [Id. at 7.] Immediately after hanging up the telephone, Captain Francis told Wilcox, "You guys need to go back and change your reports." [Id. at 8.] Wilcox told Captain Francis he would not change his report. [Id.] Captain Francis made no reply to Wilcox's refusal to change the incident report. [Id.]

Wilcox was terminated approximately four months later. He believes his refusal to change his incident report played a part in the decision to terminate him and claims that his First Amendment rights have been violated. [Doc. 28 at 3.] After he was terminated, Wilcox alleges he complained to people outside CCDC about what he characterizes as inmate abuse. [Doc. 26-3 at 2; Doc. 28 at 3.]

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate as a matter of law if the nonmoving party has failed to make an adequate showing on an essential element

of his case, as to which he has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

### B.   Free Speech Retaliation Claims

Wilcox asserts First Amendment retaliation claims against both defendants. Free speech retaliation claims by public employees involve balancing the interests of the employee, as a citizen, in commenting upon matters of public concern, and the interest of the state, as employer, in promoting the efficiency of the public services it performs through its employees. Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811, 817 (1968).

Two inquiries guide interpretation of the constitutional protections accorded to public employee speech. Garcetti v. Ceballos, __ U.S. __, 126 S.Ct. 1951, 1958 (2006). "The first requires determining whether the employee spoke as a citizen on a matter of public concern." Id. (citing Pickering, 391 U.S. at 568, 88 S.Ct. 1731). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Id. (citing Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684 (1982)). If the answer is yes, then the possibility of a First Amendment claim arises and the question becomes whether the government entity had an adequate justification for treating the employee differently from any other member of the general public. Id.

A public employee's claim that he was retaliated against for exercising freedom of

speech rights involves a five-part test referred to as the "Garcetti/Pickering" analysis.[5] Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202 (10th Cir. 2007). "First, the court must determine whether the employee speaks pursuant to his official duties." Id. (citing Garcetti v. Ceballos, 126 S.Ct. at 1960) (internal quotation marks and brackets omitted). "Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court determines whether the subject of the speech is a matter of public concern." Id. at 1202–03 (citing Green v. Bd. of County Commr's, 472 F.3d 794, 798 (10th Cir. 2007)). If the subject is not a matter of public concern, the speech is unprotected and the inquiry ends. Id. at 1203. "Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as an employer." Id. (citing Casey v. W. Las Vegas Index. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007) (internal quotation marks omitted). Fourth, if the employee's interest outweighs the employer's interest, the employee must show that his speech was a "substantial motivating factor or a motivating factor" in the detrimental employment decision. Id. (citing Lybrook, 232 F.3d at 1338). "Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." Id. (citing Lybrook, 232 F.3d at 1339) (internal quotation marks omitted).

---

[5]Prior to the Supreme Court's decision in Garcetti v. Ceballos, the inquiry combined the first two steps and was described as four-part test. Brammer-Hoelter, 492 F.3d at 1202 n.4 (*citing* Lybrook v. Members of Farmington Mun. Schs. Bd. of Educ., 232 F.3d 1334, 1338 (10th Cir. 2000)).

6

The Supreme Court decision in Garcetti has profoundly altered how courts review First Amendment retaliation claims. Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1325 (2006). After Garcetti, the crux of the inquiry is whether the employee acted pursuant to his or her official duties. Green v. Bd of County Comm'rs, 472 F.3d 794, 798 (10th Cir. 2007). If a public employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties and is not protected by the First Amendment. Brammer-Hoelter, 492 F.3d at 1203.

## IV.     FIRST AMENDMENT RETALIATION CLAIM

### A.     The Parties' Arguments

Defendants move for summary judgment on Wilcox's claim that he was retaliated against for reporting inmate abuse by detention officers. [Doc. 26 at 7.] Defendants' argument was initially directed at the fourth prong of the Garcetti/Pickering test. It is undisputed that Wilcox did not complain to people outside CCDC about alleged inmate abuse until after he was terminated. [Doc. 28 at 3.] Thus, according to Defendants, Wilcox cannot establish the allegedly protected speech was a motivating factor in the decision to terminate him. [Doc. 26 at 7–8.]

In his response memorandum, Wilcox asserts that Defendants misunderstood his First Amendment claim as it relates to inmate abuse. [Doc. 28 at 3.] Wilcox states that his claim is not based on actions he took after his termination, but on his refusal to change the incident report he wrote prior to his termination. [Id.] Specifically, he asserts that he "was terminated

7

in retaliation for refusing to change his written report about an instance of inmate abuse." [Id.]

Defendants argue in their reply brief that summary judgment is appropriate nevertheless, but for different reasons. First, they argue that Wilcox prepared the incident report in question as part of his official duties and thus was not acting as a private citizen when he created it. Second, Defendants argue that the incident report makes no mention of inmate abuse and thus does not constitute protected speech. Third, Defendants argue that the First Amendment does not protect an employee's refusal to change a "benign" report. In connection with this argument, Defendant Lucero invokes the qualified immunity defense. Fourth, they claim that even if Wilcox engaged in activity protected by the First Amendment, he cannot show the protected activity was a motivating factor in the decision to terminate his employment.

### B. Discussion

#### 1. Speech Pursuant to Official Duties

If Wilcox prepared the report in question pursuant to his official duties, Garcetti makes clear that it does not receive First Amendment protection. Garcetti, 126 S.Ct. at 1960 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). There is no formula for determining when a government employee speaks pursuant to his official duties. Brammer-Hoelter, 492 F.3d at 1203. Rather, the Court takes a practical view of the facts and

8

circumstances surrounding the speech and the employment relationship. Brammer-Hoelter, 492 F.3d at 1204. "The ultimate question is whether the employee speaks as a citizen or instead as a government employee—an individual acting in his or her professional capacity." Brammer-Hoelter, 492 F.3d at 1203 (citing Garcetti, 126 S.Ct. at 1960)(internal quotation marks omitted).

Defendants assert that Wilcox was required, as part of his official duties as a member of the SOG Team, to prepare a report of his observations following the inmate incident. In support of this contention, Defendants submit the affidavit of Mark Ewell. [Doc. 30-3.] Mr. Ewell is the Chief of Security at CCDC and oversees the SOG Team. [Id., ¶ 1.] In his affidavit, he states, "Wilcox was required, as were all members [of the SOG Team], to prepare [an] incident report regarding his observations as one of his duties as a member of the SOG Team. [Id., ¶ 6.]

Although Wilcox claims the report is "protected speech" [Doc. 28 at 4], he offers nothing to dispute the contention that he prepared it during the course of his official duties. Indeed, Wilcox's own deposition testimony supports the conclusion that writing an incident report was one of his duties as a SOG Team member:

> Q: When did you write your report?
>
> Wilcox: That night [of the inmate disturbance].
>
> Q: How long was it after the incident you wrote your report?
>
> Wilcox: A few hours, if not—
>
> Q: What were you doing the few hours before you wrote the report?

9

>   Wilcox:     We were making sure the inmates were housed. We meet back, and everybody writes a report.
>
>   Q:          Then what happened?
>
>   Wilcox:     Wrote my report and turned it in.

[Doc. 30-2 at 4.] It appears from Mr. Ewell's affidavit and from Wilcox's deposition that each member of the SOG team, including Wilcox, was required to prepare an incident report as part of their routine after handling an inmate disturbance. Wilcox therefore was speaking as a government employee in his professional capacity, not as a citizen, when he wrote the incident report.[6] Accordingly, under Garcetti, the report is not protected speech.

The inquiry does not end there, however. Wilcox's First Amendment retaliation claim presents a twist because it is premised not only on the incident report, but also on his refusal to change the report after being instructed to do so by Captain Sterling. Wilcox cites no authority for the proposition that a government employee's refusal to change a report or memorandum can be the basis of a First Amendment retaliation claim, and the Court is not aware of any such authority. However, Garcetti would appear to preclude a First Amendment cause of action under these circumstances.

Garcetti holds that the threshold inquiry for First Amendment retaliation claims is whether the expression is made pursuant to the employee's official duties. Wilcox has not articulated any reason why, if his employer required him to prepare the incident report, it

---

[6]It makes no difference that Wilcox was working as a member of the SOG Team when he wrote the incident report, rather than performing his usual CNA duties. See Brammer-Hoelter, 492 F.3d at 1203 (stating that speech may be made pursuant to official duties even if it concerns an unusual aspect of the employee's job that is not part of his everday functions).

may not also require him to change the report without running afoul of the First Amendment. Garcetti supports the conclusion that when Wilcox's employer directed him to change his report, it was simply exercising control over work product that its employee created in the course of his official employment responsibilities. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." Garcetti, 126 S.Ct. at 1960.

Furthermore, if the report itself is not protected speech, Wilcox should have no First Amendment claim based on his employer's reaction to the speech. If Wilcox's employer required him to write the incident report in question, Garcetti suggests that his employer may also dictate the contents of the report and further, terminate him if he refuses to comply.

Wilcox argues that a fact issue as to the reason he was asked to change his report precludes summary judgment. [Doc. 28 at 4.] However, the reason Defendants wanted the report changed is not material. Even if it were, Wilcox has failed to adduce any evidence that would create a triable fact issue.

Under the summary judgment standard, a mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of *material* fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Wilcox claims he was asked to change his report immediately after Captain Sterling advised Defendant Lucero of the threat of litigation by inmate Sandoval. Though Wilcox does not

11

directly state the reason, he implies that his report was objectionable to Defendants because it implicated them in inmate abuse. [Doc. 28 at 3; doc. 1, ¶ 10.]

In this respect, Wilcox's claim is no different than Garcetti or any of the other post-Garcetti free speech retaliation cases in which employees claim they were retaliated against for exposing the misconduct or misguided actions of their employers. See, e.g., Casey, 473 F.3d 1323 (school superintendent demoted after exposing abuse of the federal Head Start program); Green, 472 F.3d 794 (county juvenile justice center employee suffered unfavorable treatment by her employer after raising concerns over accuracy of drug testing program). Nevertheless, the First Amendment does not insulate the employees' conduct from employer discipline. Garcetti, 126 S.Ct. at 1960 (deputy district attorney alleged employment retaliation for complaining of improprieties in obtaining search warrant). In short, a fact issue as to the reason Wilcox was asked to change his report is not material in this case and will not preclude summary judgment.

Even if it were material, Wilcox has failed to adduce evidence that would create an issue of fact. Defendants claim Wilcox was asked to change his report because it was improperly written and failed to note details such as the presence of Captain Francis at the incident involving inmate Sandoval. [Doc. 28 at 10.] According to the deposition testimony of Captain Francis, the whole SOG Team was told they needed to rewrite their reports because some reports were illegible and others were too short. [Id.] Defendants have offered competent summary judgment evidence—the deposition testimony of Captain Francis—to support their allegation that Wilcox was asked to change his report because it was not

detailed or thorough enough.  The burden shifts to Wilcox to set forth specific facts from which a rational trier of fact could find in his favor.

Wilcox has set forth no facts or evidence that he was asked to change his report for an improper purpose.  He admitted in his deposition that he did not know why he was asked to change the report.  [Doc. 38 at 8.]  At most, Wilcox merely insinuates in his brief that Defendants did not want the alleged abuse revealed.  However, he cannot create a fact issue with unsubstantiated allegations, speculation, or conjecture.  Fed.R.Civ.P. 56(e); Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004).

Wilcox's claim fails the first prong of the Garcetti/Pickering test, which is determinative of the claim.  The Court need not proceed to consider Defendants' remaining arguments.

### 2. Matter of public concern

Even if Wilcox's claim were to pass the threshold inquiry, it should be dismissed because it fails the second prong of the Garcetti/Pickering test.  Matters of public concern are those of interest to the community for social, political, or other reasons.  Brammer-Hoelter, 492 F.3d at 1205 (citing Lighton v. Univ. of Utah, 209 F.3d 1213, 1224 (10th Cir. 2000).  Whether an employee's speech addresses a matter of public concern is determined by the "content, form, and context of a given statement, as revealed by the whole record."  Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed2d 708 (1983).

The Court considers the motive of the speaker and whether the speech "is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to

the public's interest." Brammer-Hoelter, 492 F.3d at 1205 (quoting Lighton v. Univ. of Utah, 209 F.3d 1213, 1224 (10th Cir. 2000)). "An employee's speech must not merely relate generally to a subject matter that is of public interest, but must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of the government." Moore v. City of Wynnewood, 57 F.3d 924, 932 (10th Cir. 1995). If the employee's speech cannot be fairly considered as relating to a matter of public concern, the Court need not scrutinize the reasons for discharge. Connick v. Myers, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

Wilcox's incident report cannot be considered a matter of public concern for the simple reason that it does not articulate any particular viewpoint, grievance, or complaint. Though he now argues he was reporting an incident of inmate abuse, the actual text of the report does not support this claim. While the issue of inmate abuse may be a matter of public concern, Wilcox was not seeking to inform the public of any alleged wrongdoing at the CCDC. The report does not opine that inmate abuse occurred. It does not criticize the SOG team's or his employer's actions, allege misconduct, complain or make recommendations, or express any view whatsoever as to the incident involving inmate Sandoval. Wilcox's report cannot be said to be motivated by a broad public purpose, or even by personal grievance. The incident report is merely a brief recitation of facts, an account of Wilcox's observations.

Furthermore, the record does not reflect that Wilcox prepared the report on his own initiative or in response to any concern he had over the manner in which the SOG team

14

handled inmate Sandoval. Rather, it appears that Wilcox wrote the report because he was required to provide an account of the incident as part of his job responsibilities. Thus, the content, form and context of the report all indicate that it is not the type of "speech" protected by the First Amendment.

### 3. Compelled speech

To the extent Wilcox claims the request that he change his report violated his right to refrain from speaking, the Court will consider whether he has presented a viable compelled speech claim. The First Amendment protects both the right to speak and the right to refrain from speaking. Axson-Flynn v. Johnson, 356 F.3d 1277, 1284 n.4 (10th Cir. 2004) (citing Wooley v. Maynard, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977)). Accordingly, the government may not compel the speech of private actors. Axson-Flynn, 356 F.3d at 1283.

Though Wilcox has not expressly characterized his claim as such, courts recognize a compelled speech claim under the First Amendment when an individual is obliged by the government personally to express a message he disagrees with. See Johanns v. Livestock Mktg. Ass'n, 544 U.S. 550, 557, 125 S.Ct. 2055, 2060 (2005). The absence of any compelled message, however, distinguishes Wilcox's claim from the compelled speech jurisprudence. See, e.g., W. Va. Bd. of Educ. v. Barnette, 319 U.S. 625, 63 S.Ct. 1178 (1943) (requiring school children to recite the Pledge of Allegiance while saluting the American flag on pain of expulsion violates First Amendment); Axson-Flynn, 356 F.3d 1277 (requiring university student to say "God" or "Christ" and to utter expletives as part of university

theater curriculum may violate First Amendment); Parate v. Isibor, 868 F.2d 821, 830 (3rd Cir. 1989) (forcing university professor to change student grades unconstitutionally compels speech).

Wilcox does not claim that Defendants imposed any particular message or viewpoint. Absent from the record is any allegation or evidence as to what Wilcox was compelled to say, or that he was compelled to say anything at all. Although he alleges he was told to "change his report," he fails to specify what changes he was required to make. It is undisputed that Captain Francis told Wilcox that all the members of the SOG Team involved in the incident with inmate Sandoval "need to go back and change [their] reports." [Doc. 28 at 8.] However, Defendants did not dictate the contents of the report, nor did they specify how Wilcox was to change the report.

Wilcox testified in his deposition:

> Q: Did [Captain Francis] tell you how he wanted the reports changed?
>
> Wilcox: No, sir.
>
> Q: How did you know how to change a report if he didn't tell you how to change it?
>
> Wilcox: I didn't change my report. I don't know.
>
> Q: Did you say, "Change the report? What do you want me to put in there, Captain?"
>
> Wilcox: No, sir. I said, "I'm not changing my report."
>
> Q: You're not changing your report?

|  |  |  |
|---|---|---|
| Wilcox: | Yes, sir. | |
| Q: | What did he say? | |
| Wilcox: | He didn't say anything after that. | |

[Doc. 28 at 8.]

Wilcox's testimony also appears to demonstrate an absence of coercion. A plaintiff may not prevail on a compelled speech claim unless he was actually compelled to engage in expressive activity. Donaggio v. Arlington County, Va., 880 F.Supp. 446, 459 (E.D. Va. 1995). Compulsion need not take the form of a direct threat or punishment, but may be an indirect discouragement. Axson-Flynn, 356 F.3d at 1290. Wilcox, however, has brought forth no evidence to demonstrate that Defendants threatened or in any way pressured him to change his report. According to Wilcox, when he refused to change his report, Captain Sterling said nothing.

### 4. Qualified Immunity

A government official is entitled to qualified immunity if the plaintiff fails to establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Here, Defendant Lucero is entitled to qualified immunity because Wilcox has failed to advance a viable First Amendment claim based upon the incident report.

## V. DUE PROCESS CLAIM

Wilcox initially claimed that his Fourteenth Amendment due process rights were violated because he did not receive a hearing prior to being terminated. In his response brief, however, he withdraws that claim and concedes that he did not have a property interest in

continued employment because he was on probationary status at the time of his termination. [Doc. 28 at 4.]  Accordingly, summary judgment will be granted on Count I.

## VI.  CONCLUSION

The free speech retaliation claim based upon Wilcox's incident report fails the first two prongs of the Garcetti/Pickering test.  First, the undisputed facts show that Wilcox was acting as a government employee—not a private citizen exercising free speech rights—when he wrote the incident report that is the basis of his claim. The First Amendment therefore does not shield him from retaliation by his employer.  Second, Wilcox was not speaking out on a matter of "public concern."  The content, form, and context of the report show that it was not calculated to disclose misconduct or inform the public.  It is a merely a brief factual account devoid of any allegations, statements of opinion, or other content that would entitle it to First Amendment protection.

After Garcetti, courts essentially will not recognize First Amendment claims based on government employees' work product.  See Garcetti, 126 S.Ct. at 1960.  The reason such claims fail is that employers have a heightened interest in controlling speech made by employees in their professional capacity.  Garcetti, 126 S.Ct. at 1960.  Defendants in this case had a need to ensure that Wilcox's incident report—undisputedly an official communication—was accurate, demonstrated sound judgment, and promoted the employer's mission.  See Garcetti, 126 S.Ct. at 1960.

Wilcox's disagreement with his employer over whether the incident report should be changed invokes "Garcetti's admonishment that government employees' First Amendment

rights do not invest them with a right to perform their jobs however they see fit." Green, 472 F.3d at 801 (quotation marks omitted)(quoting Garcetti, 126 S.Ct. at 1960)).  Requiring Wilcox to change the report did not violate the First Amendment, whether it is construed as a compelled speech claim or a garden-variety First Amendment retaliation claim.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion for Partial Summary Judgment on Plaintiff's Procedural Due Process and First Amendment Claims* [Doc.26] is **GRANTED.**

**SO ORDERED** this17th day of December 2007**,** in Albuquerque New Mexico.

                                                                                    _____
                                                                                    **M. CHRISTINA ARMIJO**
                                                                                    United States District Judge